UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
TIMOTHY MAKAS

                    Plaintiff,

        - against -

KRISTIN ORLANDO, MS. SHAH, MR. MALIK,
MR. WIREDU, BETH JUDGE, MR. CARBONA,
HOWARD HOLANCHOCK, ZELMA ARMSTRONG,
MS. G. SHIVASHANKAR, and MR. KATHPALIA

                    Defendants.
--------------------------------------X
DEBORAH A. BATTS, United States District Judge.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-14-__

06 Civ. 14305 (DAB)(AJP)
<u>MEMORANDUM AND ORDER</u>

I. PROCEDURAL HISTORY

    This Memorandum and Order addresses the Report and

Recommendations of Magistrate Judge Peck dated September 19, 2007

and his Supplemental Report and Recommendation dated November 21,

2007, as well as the summary judgment motions filed by Defendants

on December 3, 2007.

    On December 11, 2006, Plaintiff filed a Complaint under Case

No. 06 Civ. 14305 (DAB)(AJP) ("Complaint #2") against several

employees of the Mid-Hudson Forensic Psychiatric Center, a

facility owned and operated by the New York State Office of

1

Mental Health,[1] some of whom were Defendants named in an earlier action Case No. 07 Civ. 7108 (DAB)(FM) ("Complaint #1".)

Complaint #2 alleges, among other things, that Defendants violated his constitutional rights by continuing to draw blood from him in retaliation for the first lawsuit and by threatening to keep him confined to a psychiatric center until he dismisses that lawsuit. (Compl. #2 ¶¶ 20, 38.)

On March 5, 2007 this Court adopted the Report and Recommendation of Magistrate Judge Maas dismissing Complaint #1, and dismissed Complaint #2 sua sponte. Plaintiff was granted leave to amend Complaint #2 within 45 days of the date of that Order to state his 1983 retaliatory confinement claim with more particularity. The Court found that:

> [g]ranting leave to amend the allegations in Complaint # 2 relating to Plaintiff's Section 1983 retaliatory confinement claims may not be futile. Plaintiff alleges that a 'team' of Defendants told him: 'Stop lawsuits or you will never leave [the Mid-Hudson Psychiatric Center].' (Compl. # 2 ¶ 38.) In Complaint #2, Plaintiff also allege that Defendant Orlando 'decreed' in September of 2004 to 'hold Plaintiff at [the Mid-Hudson Psychiatric Center] for another two years because of 'renewed focus on litigation, low level psychosis [sic].' (Compl. # 2 ¶ 20.) These allegations suggest that

---

[1] In the initial Complaint, because of difficulty reading Plaintiff's handwriting, the Court assumed that Plaintiff intended to sue the New York State Office of Mental Health. The typewritten cover sheet of the Amended Complaint makes clear that he is only suing employees of Mid-Hudson.

2

> amendment of Plaintiff's Section 1983 retaliatory
> confinement claim may not be futile.

Makas v. Miraglia, 2007 WL 724603, 5 (S.D.N.Y. 2007).

On May 1, 2007, the Court granted Plaintiff more time to
file his Amended Complaint and clarified which claims could be
amended. On May 10, 2007, Plaintiff amended Complaint #2, and
included allegations related to a retaliatory transfer by
Defendants.[2] On July 18, 2007, Defendants filed a Motion to
Dismiss Complaint #2 as amended. On August 7, 2007, Plaintiff
filed his Opposition to the Motion to Dismiss Complaint #2. On
August 8, 2007, Plaintiff filed another letter seeking, among
other things, clarification on whether the Court had granted
leave in its March 5, 2007 Order for him to amend Complaint #2 to
include his retaliatory transfer allegations. Pursuant to
Plaintiff's letter, on August 17, 2007 the Court clarified that
Complaint #2 may include Plaintiff's retaliatory transfer
allegations. On August 21, 2007, the Defendants filed their
Reply, but requested leave to file a supplemental memorandum to
address Plaintiff's retaliatory transfer arguments. On August
22, 2007, this Court granted leave to Defendants to file and
serve an Amended Reply Memorandum of Law in Support of their

---

[2] Plaintiff also amended his Complaint to include causes of
action which had already been dismissed by this Court without
leave to replead, discussed infra.

Motion to Dismiss, so that they could address Plaintiff's retaliatory transfer allegations. On August 23, 2007 Plaintiff requested permission to submit a "Supplemental Memo of Law" in Complaint #2, which was denied by this Court on September 13, 2007. On September 10, 2007, Defendants served their Amended Reply, and on September 12, 2007, filed that Amended Reply with this Court.

On September 13, 2007, this Court referred the Motion to Dismiss Complaint #2 to United States Magistrate Judge Andrew J. Peck. On September 19, 2007, Judge Peck issued a Report and Recommendation ("Report #1"), recommending that Defendants' Motion to Dismiss Complaint #2 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure be denied. (Report #1, at 16.) Judge Peck further ordered that all other discovery be stayed, that Defendants take Plaintiff's deposition and move for summary judgment. (Id. at 2.) On October 2, 2007, Plaintiff filed Objections to that Report. On October 15, 2007, Defendants filed their Objections. Then, on November 21, 2007, Judge Peck filed a Supplemental Report and Recommendation ("Report #2"), clarifying certain aspects of his earlier Report, relating to, among other things, the Motion to Dismiss standard.

Defendants filed their summary judgment motion on December 3, 2007. Plaintiff filed his opposition on January 7, 2008.

4

Defendants filed their Reply on March 24, 2008. Plaintiff

attempted to file a sur-Reply on March 28, 2008, which was

rejected by this Court.

At this stage in the proceeding the Court has before it both

of Magistrate Judge Peck's Reports and Recommendation as well as

Defendant's Motion for Summary Judgment. The Plaintiff has

asserted six causes of action that Defendants seek to have

dismissed. First, a § 1983 claim of retaliatory confinement in

violation of the first and fourteenth amendments. This cause of

action included Plaintiff's claim of retaliatory ward transfer as

Ordered by this Court on August 17, 2007. However, it has

subsequently come to the attention of the Court that Plaintiff

litigated the retaliatory ward transfer claim in a prior

proceeding and that claim is now <u>res judicata</u>.[3] (<u>Makas v.

Gibson</u>, 05 Civ. 0541 (CLB)(GAY), Report and Rec. at dkt. no. 39;

Opinion and Order at dkt. no. 42.) Second, Plaintiff alleges

retaliatory blood drawing in violation of his "constitutional

_____

[3] Plaintiff alleges in his Complaint that: "5/25/05 Dr.
Judge, Malik kicks Makas off Bld2 Honor Ward for doing lawsuit
typing during (law) library time instead of going to the health
class which was assigned the same time. Sent back to bldg 4."
This appears to relate to the same incident as addressed in Judge
Briant's Report and Recommendation in which Judge Briant stated
that Plaintiff "appears to allege that defendant Holanchock
conspired with the Building 4 team to retaliate against plaintiff
for exercising his right to pursue legal claims." (Briant
Report, 05-cv-541, at 11.) Those claims were dismissed.

5

rights." This cause of action was dismissed by the Court in the March 5, 2007 Opinion without leave to amend; it cannot be relitigated here and is DISMISSED. Makas v. Miraglia, 2007 WL 724603, 2-4 (S.D.N.Y. 2007) (finding that "[t]he blood extraction claim shall be dismissed because...routine and occasional blood testing of residents of psychiatric centers does not shock a reasonable person's conscience."). Fourth, (Plaintiff did not assert a "third" cause of action) state law claims for "extortion" and "malpractice" relating to Plaintiff's increase in medication. Fifth, "malpractice" for Defendant's having stated that Plaintiff refused certain procedures and necessary bloodwork. Sixth, invasion of privacy and "defamation" for "[r]eporting ALL matters (diagnosis, medication, GAF score, sexual preference, intimate relationship data etc) to a DENNIS SCHLENKER." This Cause of action was addressed in the Court's May 1, 2007 Order which granted leave to amend Count Six "so that he may make specific allegations pertaining to his claim for invasion of privacy." (06 Civ. 14305, dkt. no. 16). Seventh, Defamation for statements regarding Plaintiff's focus on litigation, low level psychosis, and that his plans to become a paralegal "lack feasibility." This Cause of action was dismissed by the Court on May 1, 2007 and leave to amend was denied. Therefore, this issue may not be relitigated at this time and is

hereby DISMISSED. Consequently, the issues before this Court are only: Count One, as it related to Plaintiff's retaliatory confinement claim, Counts Four and Five relating to "Extortion" and "Malpractice", and Count Six for invasion of privacy.

Plaintiff has sued all Defendants, Kristin Orlando, Ms.Shah, Mr. Malik, Mr. Wiredu, Beth Judge, Mr. Cardona, Howard Holanchock, Zelma Armstrong, Ms. G. Shivashankar, and Mr. Kathpalia in their official and individual capacities. For the reasons contained herein, both of Magistrate Judge Peck's Reports shall be ADOPTED in their entirety and Defendants Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

In 1998, Plaintiff Timothy Makas set fire to one of two adjoining properties that he owned in the Village of Hurley in Ulster County. See People v. Makas, 709 N.Y.S.2d 650, 651 (3d Dep't 2000.) He then called "911" to report the fire, stating that he wanted the police to respond and shoot him. Id. After having initially been found competent to stand trial, his plea was reversed on appeal for failing to allocute to all of the elements of the crime. Id. Then, Plaintiff was permitted to plead "not responsible by reason of mental disease or defect" ("NRRMDD"). (Decl. Kalpathia at ¶ 2.) Plaintiff was committed

7

to Mid-Hudson Forensic Psychiatric Center ("Mid-Hudson") by the
County Court of Ulster County, New York, on April 12, 2001,
pursuant to Section 330.20 of the New York Criminal Procedure Law
("CPL").  (Id.)

There are extensive procedures in place to review
Plaintiff's retention at Mid-Hudson.  Once committed to a secure
facility pursuant to CPL § 330.20, the patient's retention,
transfer to a less secure facility, or release, can be decided
only by a court.  (Id. at ¶ 3); CPL § 330.20.  Approximately two
months prior to the expiration of a patient's retention order, a
"treatment team" (consisting of that patient's treating
psychiatrist, psychologist, social worker, nurse and therapy aid)
must make a recommendation to the Hospital Forensics Committee
("HFC") as to whether the patient continues to suffer from a
dangerous mental disorder.  (Id. at ¶ 5.)  The team can recommend
retention in a secure facility, transfer to a less secure
facility, or release form custody.  The HFC (consisting of three
clinicians who are licensed to practice medicine) reviews the
patient's records, interviews the treatment team, and examines
the patient.  (Id. at 7.)  The HFC then makes its own independent
recommendation to the Clinical Director regarding the patient's
current clinical condition and what type of court application –
retention, transfer, or release – is appropriate.  (Id.)  At this

8

stage, if the recommendation is release or transfer to a less secure facility, the Clinical Director must submit that recommendation to the OMH's Director of Forensic Services in Albany. (Id. at 8.) Only the Director of Forensic Services may apply for a court order to transfer or release a patient. See 14 NY ADC § 541.4.[4] However, where (as has been the case here) the Clinical Director agrees with the HFC recommendation that a patient is currently suffering from a dangerous mental disorder and requires further retention in a secure facility, the Clinical Director may apply to New York State Supreme Court for a retention order pursuant to CPL 330.20. Id.

Mid-Hudson has applied for Plaintiff's retention on: September 12, 2001, September 12, 2002, September 22, 2004, and September 12, 2006. (Decl. Kalpathia at ¶ 13.) As to each of the first three applications, state Supreme Court held a hearing

---

[4] "When a defendant is in the custody of the commissioner pursuant to a commitment order, a recommitment order or a retention order, at least 30 days prior to the expiration of the period prescribed in the order, the Director of Forensic Services, acting for the commissioner, shall apply to the court for a release order or a retention order when such order is applied for in conjunction with a transfer order, or the clinical director acting for the commissioner shall apply to the court for a retention order. An application by the clinical director pursuant to this subdivision shall be made on the basis of recommendations submitted to him or her by the treatment team after consultation with the hospital forensics committee." 14 NY ADC 541.4.

9

and determined that Mr. Makas continued to suffer from a dangerous mental disorder and ordered his further retention at a secure facility. (Id.)

## III. DISCUSSION

A. Judge Peck's Report and Recommendation

When reviewing portions of a Report and Recommendation to which no objections have been filed, "a district court need only satisfy itself there is no clear error on the face of the record." Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). However, the District Court is required under 28 U.S.C. 636(b)(1)(c) to make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which [an] objection is made." Both Plaintiff and Defendants made objections to Report #1. The Court received no objections to Report # 2.

In response to Report # 1, Plaintiff objects to Judge Peck's determination that Defendants' Motion to Dismiss should be denied. Plaintiff appears to argue that "Summary Judgement is the more appropriate vehicle" for his claims. (Pl. Obj. at 2, 5.) This, of course, is precisely what Judge Peck recommended. Judge Peck's initial Report denies Defendants' Motion to Dismiss and requires that Defendants take Plaintiff's deposition and file

10

a summary judgment motion. (Report 1 at 2.) Accordingly,
Plaintiff's objections to the Report and Recommendation must
fail.

Defendants have complied with both Reports and
Recommendation and have filed for summary judgment.
Consequently, the Court will consider the Defendants' summary
judgement motion in lieu of their objections to the Report and
Recommendation. The Court hereby ACCEPTS AND ADOPTS both Reports
and Recommendation.

B. Summary Judgment

1. The Summary Judgment Standard

A district court should grant summary judgment when there is
"no genuine issue as to any material fact," and the moving party
is entitled to judgment as a matter of law. Fed. R. Civ. P.
56(c); see also Hermes Int'l v. Lederer de Paris Fifth Ave.,
Inc., 219 F.3d 104, 107 (2d Cir. 2000). Genuine issues of
material fact cannot be created by mere conclusory allegations;
summary judgment is appropriate only when, "after drawing all
reasonable inferences in favor of a non-movant, no reasonable
trier of fact could find in favor of that party." Heublein v.
United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing
Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S.

11

574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). While a court must always "resolv[e] ambiguities and draw[ ] reasonable inferences against the moving party," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson), the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Id. at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Fed. R. Civ. P. 56(e)). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Unsupported allegations in the pleadings thus cannot create a material issue of fact. Id.

2. Retaliatory Confinement Claim

> a. Suits Against State Officials in their Official
> Capacity

Plaintiff writes: "[t]his is a Civil Rights action seeking relief and/or damages to defend and protect the Rights guaranteed by the US Constitution. This action is brought pursuant to 42 USC 1983." (Am. Compl. at 2.) He alleges and provides some documentary support for the notion that his confinement is continued, at least in part, because of his continued litigiousness. (Am. Compl. at Ex. 1, 2.)

However, the Eleventh Amendment bars suits in federal court by citizens against a state and its agencies[5] sued in their official capacity, absent waiver of immunity and consent to suit by the state or abrogation of constitutional immunity by Congress. See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984). The Eleventh Amendment also bars claims against state employees sued in their official capacities. See Hafer v. Melo, 502 U.S. 21, 25; Pennhurst, 465 U.S. at 102. All of the individual

---

[5] Mid-Hudson is an agency within the executive department of the State of New York. See N.Y. Mental Hygiene Law § 45.03(a) (McKinney 2006); In the Matter of Reckess v. New York State Commission on Quality of Care for the Mentally Disabled, 7 N.Y.3d 555, 557 (2006).

13

Defendants are employees of Mid-Hudson, and Plaintiff sues them in their official and individual capacities. (Am. Compl. at 4.) As part of the relief sought, plaintiff demands "TBD compensatory" damages, "TBD punitive" damages, "TBD exemplary" damages, "misc Declaratory and Injunctive" relief, "costs of this action", and "such other and further relief as this Court may deem appropriate." (Id. at 16.) Based on Eleventh Amendment immunity, all claims for compensatory and punitive damages against the individual State Defendants in their official capacities must be dismissed. Under the well-known exception to this rule first set forth in Ex parte Young, 209 U.S. 123 (1908), however, "a plaintiff may sue a state official acting in his official capacity-notwithstanding the Eleventh Amendment-for prospective, injunctive relief from violations of federal law." State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (citing In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007). Plaintiff has not specified what type of prospective, injunctive relief he seeks.[6] Therefore, his

---

[6] To the extent he is seeking release from detention, that is a remedy appropriately sought by habeas, which Makas has already litigated and lost, and would (in any event) be barred by the Rooker-Feldman doctrine discussed infra. Makas v. Holanchock, 02-cv-0836, (JKS/DRH) (N.D.N.Y.).

14

entire retaliatory confinement claim is barred by the Eleventh Amendment.

> b. Suits Against State Officials in their Individual
> Capacity

The Supreme Court has held that "[w]hen the suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101 (1984). Thus, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." Id. (citing Hawaii v. Gordon, 373 U.S. 57, 58 (1963). "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" Id. (citing Dugan v. Rank, 372 U.S. 609, 620 (1963) (citations omitted).

The relief Plaintiff seeks would no doubt interfere with the public administration. He has been confined to a forensic psychiatric institution and has sued the very people tasked with treating his mental illness. Any judgment in favor of Plaintiff would interfere with the "care and treatment" of Plaintiff as

15

Ordered by the New York Supreme Court. (Konowitz Decl. at Ex.
B.) Therefore, Plaintiffs claims against state officials in
their individual capacity are likewise prohibited by the Eleventh
Amendment.

### c. Rooker-Feldman

For similar reasons, Plaintiff's suit is barred by the
Rooker-Feldman doctrine. The Circuit has explained that Rooker-
Feldman "is confined to cases of the kind from which the doctrine
acquired its name: cases brought by state-court losers
complaining of injuries caused by state-court judgments rendered
before the district court proceedings commenced and inviting
district court review and rejection of those judgments." Hoblock
v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir.
2005) (quoting Exxon Mobil, 125 S.Ct. at 1521-22). As such, the
Circuit has established a four part test:

> First, the federal-court plaintiff must have lost
> in state court. Second, the plaintiff must
> "complain[ ] of injuries caused by [a] state-court
> judgment[.]" Third, the plaintiff must "invit[e]
> district court review and rejection of [that]
> judgment[ ]." Fourth, the state-court judgment
> must have been "rendered before the district court
> proceedings commenced" i.e., Rooker-Feldman has no
> application to federal-court suits proceeding in
> parallel with ongoing state-court litigation.

16

Id. Further, the Circuit has explained that "Rooker-Feldman bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment." Id. Yet, acknowledging that the phrase "inextricably intertwined" has no independent content, the Circuit further noted that "[t]he key to resolving this uncertainty lies in the second substantive Rooker-Feldman requirement: that federal plaintiffs are not subject to the Rooker-Feldman bar unless they complain of an injury caused by a state judgment. Indeed, this is the core requirement from which the others derive; focusing on it helps clarify when the doctrine applies." Id. at 87.

The doctrine clearly applies here. Contrary to Plaintiff's belief that his mental health treatment team (whom he has sued) are responsible for his confinement, his current confinement is pursuant to the determination of State Supreme Court Judge, Hon. Nicholas De Rosa, who, after holding a hearing on May 11, 2005, found that Plaintiff "currently suffers from a dangerous mental disorder as that term is defined in paragraph (c) of subdivision one of CPL 330.20," and Ordered that the "Commissioner of Mental Health is authorized to continue custody of the defendant for care and treatment for a period not to exceed two years from the

17

expiration of the period prescribed in the aforesaid second
retention Order." (Decl. Konowitz, at Ex. B.)

Plaintiff is seeking redress ("relief and/or damages") for
the alleged injuries caused by this state court judgment which
has resulted his continued confinement. Any relief sought by
Plaintiff would require this Court to review and overturn that
state court judgment, which is precisely the circumstance which
Rooker-Feldman prohibits.[7]

For the reasons stated herein, summary judgment for
Defendants is GRANTED on Count One.

2.   Plaintiff's Invasion of Privacy Claims

Plaintiff's other "constitutional" claim involves the
invasion of privacy which he claims resulted from the disclosure
of his confidential medical information to a Mr. Schlenker. As
this Court noted in its May 1, 2007 Order, Plaintiff was granted
leave to amend his invasion of privacy claim so that he could
make specific allegations as to who Dennis Schlenker is and what

---

[7]   The Court notes that Plaintiff is not challenging the
constitutionality of the statute or procedures for the review of
his custody. See e.g., Ernst J. v. Stone, 452 F.3d 186, 198 (2d
Cir. 2006). In fact, he has already tried such claims, and lost.
Makas v. State of New York, 2007 WL 2455053 (N.D.N.Y. Aug. 23,
2007.)

18

personal information was revealed to Schlenker. (Order, May 1, 2007, at 2.) Plaintiff has provided more clarity on this matter in his Amended Complaint, providing that Mr. Schlenker was his former defense attorney and detailing specific facts disclosed to him. (Am. Compl. at 9.) Plaintiff claims that certain information (that he is heterosexual, for instance) should not have been disclosed because he fired Mr. Schlenker in 2001 and told Defendants that "Schlenker is not involved years ago." (Am. Compl. at 9.)

This is not Plaintiff's first attempt at an invasion of privacy claim, and this claim fails for the same reasons that prior claims have failed: the type of information shared does not rise to the level of a constitutional violation and, even assuming it did, Defendants would be entitled to qualified immunity. (Ord. Mar. 5, 2007, 06-civ-7180, dkt. 6 at 6.) The disclosure here, to Plaintiff's own former Defense Attorney, of the September 12, 2006 retention application, was an innocent mistake, disclosing Plaintiff's mental illness to a man who was responsible for negotiating his plea of not responsible by reason of mental disease or defect.[8]

---

[8] Defendants have put forward uncontroverted evidence that they are legally bound to serve Plaintiff's defense attorney with retention applications and that they were unaware that Plaintiff had fired Mr. Schlenker. (Kathpalia Decl. at ¶¶ 8, 11-12.)

19

It has been recognized by the Supreme Court, "that there exists in the United States Constitution a right to privacy protecting 'the individual interest in avoiding disclosure of personal matters.'" Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994) (quoting Whalen v. Roe, 429 U.S. 589, 599 (1977); Powell v. Schriver, 175 F.3d 107, 110 (2d Cir. 1999). And although the Court concluded that "the right to confidentiality includes the right to protection regarding information about the state of one's health," it noted that "the interest in the privacy of medical information will vary with the condition." Id. While Courts have recognized a privacy interest in such medical information as HIV status and transsexualism (id.), there has been no such recognition of a constitutional dimension to Plaintiff's claims of disclosure of his psychiatric diagnosis (which is a matter of public record), heterosexuality, his relationship history, and his Global Assessment of Functioning (GAF) score. (Pl. Dep. at 174-175.) Further, the "disclosure" to his former defense attorney could properly be described as de minimis.

Therefore, the Court need not reach the qualified immunity of Defendants for Plaintiff's invasion of privacy claim (which has already been addressed in the Report and Recommendation of

Judge Maas, 05 civ 7180, Dec. 28, 2006), because Plaintiff has failed to assert a constitutionally protected privacy right.

    2.    Plaintiff's Claims of "Extortion" and "Malpractice"

In Count Four ("Extortion/Malpractice"), Plaintiff claims that "Shah's increasing Plaintiffs medication w/o bloodwork then refusing to decrease it unless bloodwork is done is 'extortion' and 'malpractice.'" (Am. Compl. at 12.)

A district court will decline to exercise supplemental jurisdiction over state law claims when it has dismissed all of the claims over which it has original jurisdiction. See Sadallah v. City of Utica, 383 F.3d 34, 40 (2d Cir. 2004) (citations omitted). As demonstrated above, all of plaintiff's federal claims which could provide a basis for federal jurisdiction are dismissed. Accordingly, the Court declines to exercise jurisdiction over the state law claims. Miller v. Carpinello, 2007 WL 4207282, 8 (S.D.N.Y. 2007)

III. CONCLUSION

It is hereby ORDERED that: the September 19, 2007 Report and Recommendation of Magistrate Judge Peck is ADOPTED in its entirety. Likewise, the November 26, 2007 Supplemental Report

21

and Recommendation of Magistrate Judge Peck is ADOPTED in its entirety. Finally, Summary Judgment is GRANTED to Defendants on all claims.

Consequently, the Clerk of the Court is hereby directed to terminate the Motions, Reports, and Objections at the following docket locations: 06-Civ-14305, Dkt # 20, 32, 35, 37, 42, and 53. Further, the Clerk of the Court is hereby directed to CLOSE the docket in this case (07-Civ-14305) and in the case located at docket number 05-Civ-7180 (Makas v. Miraglia et al.).

SO ORDERED.

Dated:     New York, New York

May 6, 2008

Deborah A. Batts
United States District Judge

22